**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

In re:

Weaver Oil Company, Inc.,                          CASE NO.: 08-40379-LMK

   Debtor.                                         CHAPTER: 11

_____/

**ORDER GRANTING MOTION FOR AUTHORIZATION
TO REJECT EXECUTORY CONTRACT**

THIS MATTER came before the Court for evidentiary hearing on September 17, 2008, on Weaver Oil Company, Inc.'s, Motion Pursuant to Section 365(a) of the Bankruptcy Code and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure for Authorization to Reject Master Motor Fuel Operations and Personal Supply Agreement (the "Motion to Reject"). At the conclusion of the hearing the parties indicated that referral to mediation would be beneficial. Accordingly, this Court entered an Order of Referral to Mediation allowing the parties until October 2, 2008, to mediate this matter. The mediator reported that the parties reached an impasse; therefore, this matter is now ripe of a judicial determination. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A).

**BACKGROUND**

Weaver Oil Company, Inc., Debtor and Debtor-in-Possession (the "Debtor"), operated both the fueling stations and convenience store facilities of numerous owned or leased locations in north Florida until June 30, 2000. At that time, the Debtor entered into the Master Motor Fuel Operations and Personnel Supply Agreement (the "Contract") with Ware Oil & Supply Co., Inc., ("Ware Oil"). The Contract provided for Ware Oil to assume overall management, control, and operation of the self-serve motor fuel sales facilities at the Debtor's six owned or leased conven-

ience store locations. The Contract required Ware Oil to provide, install, and maintain fuel pumps and related equipment, and to supply motor fuel and other fuel products at each location. Ware Oil also set the prices at which the fuel would be sold at each location. The Contract required the Debtor to provide convenience store personnel to collect and transmit monies paid for the motor fuel products to Ware Oil, to perform basic grounds maintenance, inspections and clean-up at the pump locations, and to "stick the tanks", take meter readings of the pumps, and submit reports to Ware Oil regarding local competitor's prices. The Contract provided for an initial term of fifteen years, until June 29, 2015, with an option for Ware Oil to extend the Contract for an additional five years, or until June 29, 2020. Funds generated from the sale of fuel products were to be remitted to Ware Oil, and the Debtor, or a related entity of the Debtor, was to be compensated by receiving 40% of the gross monthly profits from each gallon of motor fuel sold at the motor fuel sales facilities.

The Debtor contends that under the agreement Ware Oil failed to maintain the fuel pumps, frequently priced its motor fuel products at or above, but never below, competing prices for branded fuel stations, and failed to provide alternative and competitive fuel products when a perceived boycott of Citgo fuel products may have had an impact upon demand in the market. The Debtor contends that a combination of these factors led to a decrease in the number of customers patronizing the convenience stores and that this decrease led to the filing of its voluntary Chapter 11 bankruptcy petition in this Court, on June 6, 2008. After filing the petition, the Debtor in its capacity as Debtor-in-Possession, filed the Motion to Reject Lease or Executory Contract, in which it contends that the Contract is burdensome to its attempts to reorganize, and that it should be entitled to reject it under 11 U.S.C. § 365(a). Ware Oil filed a response, objection, and amended response to the Motion, contending that rejection of the Contract would not benefit the

estate, and that rejection is not warranted. Both parties provided memorandums of law and an evidentiary hearing was conducted thereon on September 17, 2008. At the hearing, both parties stipulated that the agreement satisfies the definition of an executory contract in § 365(a) of the Bankruptcy Code.

### DISCUSSION

The question presented is whether this Court should approve the decision to reject the Contract under section 365 of the Bankruptcy Code. Section 365 provides, in pertinent part, "the trustee, subject to the court's approval, may assume or reject any executory contract … of the debtor." 11 U.S.C. § 365(a). Section 1107(a) of the Bankruptcy Code makes this power applicable to the Debtor-in-Possession.

When reviewing the decision to assume or reject an executory contract, most courts, including those in the Eleventh Circuit, apply the "business judgment rule." Under the "business judgment rule", the Bankruptcy Court recognizes that it is "no more equipped to make subjective business decisions for insolvent businesses than [the Court is] for solvent businesses," and the formulation of the business judgment rule in corporate litigation is also the appropriate formulation of the business judgment rule in the Bankruptcy Court. *In Re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007). The Bankruptcy Court presumes that "the [D]ebtor-in-[P]ossession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Id.* "Ordinarily, the decision to assume or reject an executory contract is left entirely to the [D]ebtor. Upon proper motion, the Court should give perfunctory approval of the decision subject only to review under the business judgment rule. This test simply requires a showing by the Trustee or [D]ebtor-in-[P]ossession that rejection of the contract will likely benefit the estate." *In Re Sun City In-*

*vestment, Inc.* 89 B.R. 245, 248-249 (Bankr. M.D. Fla. 1988). The Bankruptcy Court will generally approve the rejection of an executory contract unless it finds that the Debtor-in-Possession's conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim, or caprice. *Pomona,* 476 F.3d at 670; *In Re Prime Motor Inns,* 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991). Thus, the issue of whether a rejection satisfies the business judgment rule is one of fact to be decided by the bankruptcy court, and "the burden on the movant in this case is merely to produce 'any credible evidence that rejection would benefit the estate or result in a successful reorganization." *Prime Motor Inns*, 124 B.R. at 382 (citing *In re Sun City Investments, Inc.*, 89 B.R. at 249). Once the Debtor-in-Possession meets it burden of showing that its rejection of an executory contract will benefit the estate, the the non-debtor party bears the burden of proving that the Debtor's decision derives from bad faith, whim, or caprice. *In re Nickels Midway Pier, LLC,* 341 B.R. 486, 493 (Bankr. D.N.J. 2006), aff'd in part, 341 B.R. 486 (D.N.J. 2006), aff'd, 255 F.App'x 633 (3d Cir. 2007), cert. denied, 255 F.App'x 633 (2008).

The Debtor testified that its decision to reject the Contract is justified because in absence of rejection its business would be forced to shut down. As support for this testimony, the Debtor offered into evidence the daily surveys of comparable fuel prices, which were required to be remitted to Ware Oil daily for fuel pricing purposes, for the two operational owned or leased convenience store locations, Pendletons #4 in Appalachicola, Florida, and Hogly Woggly No. 8 in Tallahassee, Florida. The daily fuel surveys between February 2008, and August 2008, for Pendletons, and between March 2008, and August 2008, for Hogly Woggly No. 8, indicate that Ware Oil's prices for both unleaded and diesel fuel were consistently at or above, and very seldomly below, the highest comparable branded fuel sales locations in the immediate area sur-

rounding the respective convenience store locations. The average unleaded and diesel fuel prices for all comparable locations, and not just the highest comparable fuel sales location, indicate that the prices at the Debtor's locations are higher than the general market.

The Debtor provided evidence demonstrating a declining trend in the number of gallons of gas sold at each location. This evidence was presented in the form of data compiled for each location for the same period during the years 2007 and 2008. For Pendletons in 2008, the number of gallons of gas sold for the respective months was down from the same periods as follows: (2,643) for January; (2,250) for February; (3,554) for March; (4,064) for April; (4,612) for May; (5,123) for June. As for Hogly Woggly No. 8 in 2008, the number of gallons of gas sold for the respective months was down for the same periods as follows: (7,576) for January; (11,535) for February; (20,168) for March; (15,639) for April; (10,268) for May; (13,157) for June. Overall, these figures show that fuel sales were down approximately 12% for Pendletons, and 27% for Hogly Woggly No. 8, in 2008 from the corresponding period in 2007.

The Debtor offered into evidence its profit and loss statements dated between January 2008-July 2008, which indicate that while some stations are leased to both related and unrelated entities of the Debtor, a significant portion of the Debtor's income is derived directly from convenience store sales. The profit and loss statements demonstrate that the net operating income of the Debtor during 2008 has been ($18,829.10) for January, ($5,460.05) for February, ($7,807.79) for March, ($5,189.12) for April, ($3,394.24) for May, ($17,440.01) for June, and ($1,184.20) for July. For the period July 2007-June 2008, the Debtor's profit and loss statement shows that the net operating income was ($153,617.03).

The Debtor testified that it believes the above market pricing of fuel products by Ware Oil is the reason for the lower fuel sales and corresponding losses sustained by the Debtor. As support

for this testimony, the Debtor has provided an article from a February, 2008, convenience store industry publication which indicates that national surveys show price at the pump is the most critical factor in determining where consumers will decide to fill up.  The Debtor has also testified that it believes it will be able to enter a new fuel sales contract with a new brand of gasoline, priced at more competitive rates, if it is able to terminate the Contract

While the evidence provided may not be overwhelmingly persuasive, it need not be.  The key is that this evidence be not so manifestly unreasonable that it could not be based on sound business judgment.  If the proper standard of review were preponderance of the evidence or greater weight of the evidence, the debtor-in-possession may not have satisfied its burden.  *Id.*, *In Re Prime Motor Inns.*, 124 B.R. at 381.  However, since reasonable minds could differ as to whether rejection would result in an increase in the net operating income of this Debtor, rejection of the Contract is permissible.  I am satisfied that the Debtor has carried its burden in providing credible evidence that its decision to reject is based upon a reasonable exercise of business judgment.

The next question is whether rejection of the Contract would benefit the bankruptcy.  Ware Oil contends that because there are virtually no unsecured creditors, rejection of the Contract will give rise to a large rejection claim, which would offset and outweigh any benefit to the estate and otherwise only result in a detriment to Ware Oil.  The Debtor contends that rejection of this claim would advance its plans for economic recovery by enabling it to enter a new fuel sales contract, under a new brand of gasoline and under more favorable market rates for fuel sales.  This would result in higher volume of convenience store consumers and a higher net operating income from convenience store sales.  The Debtor contends that it is unable to continue operations under the Contract, and without rejection it will be forced to close down operations.  This plan for entry of a contract on more favorable terms, and the resulting continuation of operations,

represents a benefit to this estate. While it may be true that there are no present unsecured creditors of this Debtor, there are other secured creditors, and continuation of operations would result in a benefit to the interests of those creditors.

The question becomes, would rejection of the Contract result in a rejection claim that would be so large as to eliminate any potential benefit to the estate. The decision to reject a contract results in a breach that is treated by 11 U.S.C. § 365(g)(1) as a prepetition breach by the debtor. If rejected, Ware Oil would become a creditor, as that term is defined in 11 U.S.C. § 101(10)(B), and its claim for damages for breach of contract is classified by 11 U.S.C. § 502(g) as a general unsecured prepetition claim. Assuming, without any decision pertaining to this claim, that the § 502(g) claim would be required to be paid in full under a plan of reorganization, the question becomes whether this rejection claim would be so large as to outweigh any benefit to the estate. *In Re Exide Technologies*, 340 B.R. 222, 245 (Bankr. D. Del. 2006) (the impact of a debtor's potential rejection damage claim on the estate is relevant in determining the appropriateness of the decision to reject, and the bankruptcy court's inquiry need only determine whether the rejection claim would be so large as to outweigh the potential benefits of rejection, and make the decision to reject unreasonable). Based upon the testimony of Ware Oil, the projected lost revenue for the remaining 7 years on the Contract would be approximately $1,037,000.00. Assuming a discount rate of 6%, the present value of Ware Oil's lost revenue would result in a § 502(g) claim of approximately $689,000.00 today.

The Debtor and a prospective purchaser of the Bristol, Florida convenience store location testified that if the Contract were rejected, both would be willing to close on their pending contract, entered on August 20, 2007, for $250,000.00, and that the proceeds flowing to one of the Debtor's related business entities would be dedicated to the bankruptcy estate. The Debtor also testi-

fied that if the Contract is rejected, he is certain that the Pensacola Street location could be sold for approximately $600,000.00 and the proceeds of that sale would also be dedicated to the bankruptcy estate. The sale of these two parcels alone, at the figures represented, and the resulting dedication of these funds to the bankruptcy estate, appear to provide more than sufficient funds to offset the present value of the potential § 502(g) claim. Thus, I am satisfied that the rejection of the Contract would result in a net benefit to the bankruptcy estate.

Lastly, Ware Oil urges this court to find the attempt at rejection bad faith based on *In re Noco*, 76 B.R. 839 (Bankr. N.D. Fla. 1987). *In Re Noco* involved a franchisor with a successful business operation which filed its petiton for Chapter 11 reorganization solely to avoid a covenenant not to compete contained in the franchise agreement. In *In Re Noco,* this Court determined that Noco's use of the Code to reject a convenant not to compete by a solvent and profitable corporation constituted the type of bad faith that would warrant this Court to disapprove of the attempt at rejection. The present case is distinguishable because the profit and loss statements establish that the Debtor was not profitable at the time of filing its Chapter 11 petition, and the evidence establishes that, while perhaps not a certainty, the rejection of the Contract could lead to a successful reorganization. The evidence in the present case establishes that rejection the Contract is an attempt by the Debtor to free itself from an extreme economic burden and the preliminary agreement with Eli Roberts Co. establishes that an attempt at reorganization is a possibility. This Court is not alone in allowing the estate to reject a contract where the Debtor is genuinely in need of relief from financial adversity and the Debtor's decision is not solely motivated by the purpose of eliminating a contractual obligation. *See, e.g. In Re Taylor*, 913 F.2d 102 (3d Cir. 1990); *All Blacks B.V. v. Gruntruck*, 199 B.R. 970 (W.D. Wash. 1996).

The Debtor has produced some credible evidence that its decision to reject the Contract was based on a business judgment decision and that rejection of the Contract will benefit the estate. Ware Oil has not carried its burden in either discrediting the Debtor's contention that the estate will receive a benefit from the rejection, or in proving that the decision is the result of bad faith, whim, or caprice.  Accordingly, it is hereby

ORDERED and ADJUDGED that the Debtor's Motion Pursuant to Section 365(a) of the Bankruptcy Code and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure for Authorization to Reject Master Motor Fuel Operations and Personal Supply Agreement (Doc. 21) is GRANTED.

DONE and ORDERED in Tallahassee, Florida this 17th day of November, 2008.

_____
LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc:  all parties in interest